**UNITED STATES of America ex rel.
Susan KAISER, Petitioner,**

v.

**Edna MAHAN, Superintendent New Jersey State Reformatory for Women,
at Clinton, N. J., Respondent.**

**UNITED STATES of America ex rel.
Harry J. KAISER, Petitioner,**

v.

**Howard YEAGER, Principal Keeper, New
Jersey State Prison, Respondent.**

**Civ. A. Nos. 392–64, 394–64.**

United States District Court
D. New Jersey.

Sept. 4, 1964.

John J. Corcoran, Jr., Jersey City,
N. J., for petitioners.

Guy W. Calissi, Bergen County Prosecutor, by Ronald J. Picinich, Asst. Prosecutor, for the State of New Jersey.

WORTENDYKE, District Judge:

These two petitions involve common questions of law and fact. They were heard and are considered together.

Relator Susan Kaiser is presently in the custody of the respondent Mahan, by virtue of concurrent sentences imposed upon her after conviction by a jury in the Bergen County Court, of accusations of violations of the criminal laws of the State of New Jersey, embodied in four indictments and tried together.

Relator Harry J. Kaiser (the son of Susan) is presently in the custody of respondent Yeager, by virtue of concurrent sentences imposed upon him after conviction, by the same jury in the Bergen County Court, of accusations of violations of the criminal laws of the State of New Jersey, embodied in four indictments and tried together.

Each petitioner contends that his present incarceration amounts to the deprivation of his liberty without due process of law in violation of the guarantees afforded by the Fourth, Fourteenth and Fifth Amendments to the Constitution of the United States in that his convictions resulted from the use of evidence illegally searched for and seized on a search warrant issued upon a concededly insufficient affidavit.[1]

Pursuant to 28 U.S.C. § 2243, the application of relator Susan Kaiser was entertained by the undersigned who thereupon issued an order directing respondent to show cause why a writ of habeas corpus should not be issued to her. The order to show cause was treated, upon its return, as having been issued upon the application of Harry J. Kaiser as well.

An answer was filed by the respondent in each of the captioned cases in behalf of the State of New Jersey and an evidentiary hearing upon the applications of both relators was held on June 8, 1964. At that hearing, oral testimony was given by each of the relators and by an additional witness, and portions of the trial and appellate records of each of the relators, together with a certified copy of an order of the Hudson County Court, Law Division, entered on June 22, 1962 in State of New Jersey v. Joseph Moriarty, sur Indictment 813–61, were admitted in evidence. No evidence in behalf of the State of New Jersey was adduced on the hearing.

Relators' applications are in writing, signed and verified by John J. Corcoran, Jr., Esq., an attorney-at-law of New Jersey, their retained counsel, acting in their behalf in these proceedings. Petitioners were represented by other re-

---

1. The search warrant was issued upon an affidavit by an officer of the New Jersey State Police stating: "I have good reason to believe, and do believe, that in and upon certain premises within the Borough of North Arlington, County of Bergen, State of New Jersey, to wit: premises known as 53 Forest Street, and more particularly described as follows: a one-story brick house with attached garage, occupied by and under the control of unknown persons, there have been and now are being conducted the illegal practice commonly known as bookmaking and maintaining a lottery in violation of the laws of the State of New Jersey, to wit: N.J.S. 2A:112–3 [N.J.S.A.] and N.J.S. 2A:121–3 [N.J.S.A.] That the facts tending to establish the grounds for this application, and the probable cause of the deponent's belief that such grounds exist are as follows: Information given to the deponent to the effect that bookmaking and a lottery are being conducted within the above described premises." In affirming the trial court's denial of petitioners' motions to vacate the judgments of conviction and for a new trial, the Appellate Division of the Superior Court of New Jersey, 1963, State v. Kaiser, 80 N.J.Super. 176, at p. 178, 193 A.2d 270, at p. 271, per Foley, J. A. D., pointed out, that "Respondent State concedes that the application [for the search warrant] 'falls short of the standards recently enunciated by our Supreme Court.' "

tained counsel upon their trial, appellate and other post-trial proceedings. They were represented upon the trial by Benedict Lucchi, Esq., and on their appeals by Abraham J. Slurzberg, Esq., Irving I. Vogelman, Esq. and Jay R. Reuben, Esq., all members of the New Jersey Bar.

The sentences presently being served by relators were imposed on June 23, 1961, following their convictions on May 18 of that year. Relators, in June 1961, appealed from their convictions to the Appellate Division of the Superior Court of New Jersey, which affirmed the same in May, 1962. See 74 N.J.Super. 257, 181 A.2d 184. Petitions for certification to the New Jersey Supreme Court, filed on June 25, 1962, were denied without opinion on September 17, 1962, 38 N.J. 310, 184 A.2d 422.

The single ground upon which relators base their present applications is found in their contention that their convictions resulted from the use of evidence searched for and seized under a search warrant issued upon an insufficient affidavit. See State v. Macri, 1963, 39 N.J. 250, 188 A.2d 389; United States Constitution, Fourth Amendment; Nathanson v. United States, 1933, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159; Weller v. Russell, 3 Cir. 1963, 321 F.2d 848. The material discovered and obtained pursuant to the warrant was admitted in evidence without objection by relators and constituted the principal evidential basis for the convictions which resulted. Upon the appeals of the convictions to the Appellate Division of the Superior Court, no criticism was made by the appellants of the admission of the evidence procured through the search and seizure, nor was the sufficiency of the warrant therefor impugned as a ground of appeal.[2] The

convictions were affirmed by the Appellate Division of the New Jersey Superior Court on May 14, 1962, 74 N.J.Super. 257, 181 A.2d 184. The Supreme Court of the United States decided Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, on June 19, 1961, which was thirty-two days after the convictions of the relators and four days prior to the imposition (on June 23, 1961) of sentences thereunder. On November 9, 1962, relators moved the Bergen County Court, in which they had been convicted, to set aside the convictions and for a new trial of each of the indictments. They based the motions upon Mapp v. Ohio, supra, and Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. These motions were denied by the trial Court for the failure of relators to object on the trial to the admission of the evidence obtained by the seizure, and also because of relators' failure to invoke the Mapp rule on their appeals to the Appellate Division and their subsequent petitions for certification. From the denial of their motions, relators appealed to the Appellate Division of the New Jersey Superior Court, where the denial was affirmed. See 80 N.J.Super. 176, 193 A.2d 270. From the last mentioned decision, relators petitioned the New Jersey Supreme Court for certification, claiming that the decision in Mapp v. Ohio was retroactive, and citing and relying upon State v. Smith, 1962, 37 N.J. 481, 181 A.2d 761 and State v. Scrotsky, 1962, 38 N.J. 14, 182 A.2d 868. The New Jersey Supreme Court denied, without opinion, the petitions for certification on November 26, 1963, 41 N.J. 200, 195 A.2d 468. Relators then obtained a stay of execution of their sentences and petitioned the Supreme Court of the United States for certiorari.

2. The opinion of the Appellate Division of the Superior Court of New Jersey, 1962, 74 N.J.Super. 257, p. 270, 181 A.2d 184, p. 191, which affirmed the convictions of the present petitioners, discloses that the only federal constitutional question presented upon that appeal was Susan Kaiser's contention that the trial court

denied her due process of law by refusing to grant a continuance of the trial when " * * * her health was immediately affected to the degree that her perception and awareness of current events were dulled so that her ability to participate in the presentation of her defense was impaired."

That petition was denied without opinion on March 23, 1964. Relators' subsequent petition to the same Court for rehearing was denied on April 20, 1964. Relators commenced the service of their sentences on April 7, 1964. The present applications for the writs were filed in this Court on April 23, 1964.

■ Although petitioners failed to allege the applicability of Mapp on their initial direct appeal from conviction, in a subsequent post-conviction proceeding (application to the trial Judge for a new trial) they did urge that doctrine through the New Jersey Supreme Court, and thus satisfied the requirements of § 2254, as interpreted in Brown v. Allen, 1953, 344 U.S. 443, 447–450, 73 S.Ct. 397, 97 L.Ed. 469, and qualified in Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

At the hearing on the present petitions the testimony revealed that, after sentence and pending appeal from their convictions to the Appellate Division of the New Jersey Superior Court, relators suggested to their attorney that he urge as a ground for reversal, the rule in Mapp v. Ohio. This suggestion was renewed in contemplation of relators' petitions for certification to the New Jersey Supreme Court. Relators testified that they became aware of the decision in Mapp v. Ohio because it had been mentioned in a newspaper account of a successful motion to suppress similar evidence in connection with the case of State of New Jersey v. Moriarty, Indictment No. 813–61 in the Hudson County (New Jersey) Court, Law Division. The attorney, Mr. Slurzberg, refused to raise the Mapp decision because, according to the testimony of Harry Kaiser, "he [Slurzberg] didn't understand the phrase 'probable cause'." Attorney Lucchi, who tried relators' cases, had been recommended to them by another attorney whose identity was not disclosed on the hearing. Harry Kaiser testified that Mr. Slurzberg was recommended to him by Abraham Miller, Esq., a lifelong friend, who is also a member of the New Jersey Bar. Both attorneys Lucchi and Slurzberg were present in the trial court when the sentences were imposed, but although on that occasion Slurzberg discussed Mapp v. Ohio with the sentencing Judge, Harry Kaiser had not heard of the case previously. It was not until after the relators were unsuccessful on their first appeal, before filing a petition for certification, that Kaiser read about the Mapp case in the press account of the Moriarty case. Harry Kaiser made no effort to inquire of Abraham Miller, Esq., respecting Slurzberg's difficulty with the phrase "probable cause", nor did Kaiser discuss the Mapp case with anyone else. The petition for certification was filed by Slurzberg for the Kaisers; but Mapp v. Ohio was not urged as a ground for reversal. After lack of success before the New Jersey Supreme Court, Kaiser retained another lawyer, Irving I. Vogelman, Esq., and later retained Mr. Corcoran, who presently appears for both of the relators.

Susan Kaiser testified substantially in accord with the testimony of her son, Harry. Learning that Moriarty "got out of it" with a defective warrant under the rule in Mapp v. Ohio, Mrs. Kaiser testified that she discussed with Slurzberg the desirability of urging the Mapp decision before the New Jersey Supreme Court in her case, but she acceded to his refusal to do so because she had confidence in his judgment. Harry Kaiser's wife also testified on the hearing before me to the effect that after her husband had lost the appeal, she made efforts through Mr. Miller to make contact with Mr. Slurzberg, and after obtaining an appointment with Mr. Slurzberg through Mr. Miller's efforts, she accompanied her husband when he conferred with Mr. Slurzberg. She stated that Slurzberg was annoyed because they had spoken to another lawyer. Beyond that, her testimony indicated a hazy recollection and was of little assistance upon the issue then before the Court.

Relators seek to avoid implication of waiver of their right to attack the suf-

ficiency of the affidavit upon which the search warrant was granted by referring to an "aura of uncertainty" which they claim still persists respecting the retroactivity of Mapp v. Ohio, supra, in the light of People v. Hurst, 9 Cir. 1963, 325 F.2d 891; Hall v. Warden, 4 Cir. 1963, 313 F.2d 483, cert. den. Pepersack v. Hall, 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032, and Walker v. Pepersack, 4 Cir. 1963, 316 F.2d 119, holding that Mapp is retroactive, and in the light of Gaitan v. United States, 10 Cir. 1963, 317 F.2d 494 and United States ex rel. Linkletter v. Walker, 5 Cir. 1963, 323 F.2d 11, holding that Mapp is not retroactive. Our own Circuit has determined that the Mapp rule should operate retroactively in United States ex rel. Campbell v. Rundle, 1964, 327 F.2d 153. In that case Chief Judge Biggs reviewed Mapp and other search-and-seizure cases against the background of a State court conviction and imposition of sentence *antedating*, and an attack by way of habeas corpus application in a State court *succeeding*, Mapp. Judge Biggs pointed out, at p. 161 that "The issue of insufficiency of the complaint and of the search warrant itself on their respective faces was not specifically raised in the court below or in this court until we raised it *sua sponte*." The Court of Appeals accordingly passed upon the sufficiency of the application for the warrant and the search warrant itself and found each insufficient. The Court then passed to the question of the applicability of the Mapp doctrine and held (pp. 163–164), " * * * [T]hat it was the intention of the Supreme Court of the United States to make the principle of Mapp v. Ohio applicable as a basis for granting habeas corpus in federal courts in cases where the appeal process had not been completed in state tribunals when Mapp was decided." The Circuit Court affirmed the District Court, in denying the application for the writ, upon the ground that it appeared that the applicant had not exhausted the reme-

dies available to him in the courts of the State.

It is, however, unnecessary to decide whether Mapp is constitutionally required to be given retroactive application here when Mapp was decided after the petitioners' convictions but before they had completed their direct appeals therefrom. In such a case, New Jersey has permitted a defendant to raise Mapp for the first time during the appellate process, State v. Valentin, 1961, 36 N.J. 41, 174 A.2d 737; State v. Smith, 1962, 37 N.J. 481, 181 A.2d 761; State v. Scrotsky, 1962, 38 N.J. 14, 182 A.2d 868; State v. Doyle, 1963, 40 N.J. 320, 191 A.2d 478; 1964, 42 N.J. 334, 200 A.2d 606. Cf. State v. Smith, 1964, 43 N.J. 67, 202 A.2d 669. As far as the present petitioners are concerned, New Jersey has made Mapp retroactive to their cases, and they are in the same position as if their trial and convictions had occurred after Mapp was decided.

The question then is what effect must be given to the fact that the petitioners never took advantage of their opportunity to assert Mapp from the date of their sentencing in June, 1961, to the date of their petition for certification to the New Jersey Supreme Court in June, 1962. Did the petitioners waive their right to assert the applicability of Mapp's exclusionary rule to their convictions and thereby lose their right to assert that ground as a basis for a habeas corpus petition to this Court?

█ On the present applications for habeas corpus, however, the question of whether there has been a waiver of the right to assert the Federal constitutional claim, on which the habeas petitions are based, is solely a question of Federal law, United States ex rel. Noia v. Fay, 2 Cir. 1962, 300 F.2d 345, 350, affd. 1963, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed. 2d 837.

In affirming the trial Court's denial of relators' motions to vacate the judgments of conviction against them, the

Appellate Division of the Superior Court of New Jersey, per Foley, J. A. D., held, 80. N.J.Super. 176, at 184, 193 A.2d 270, at 274, with respect to waiver:

"It is true that in the present case defendants could not have known of Mapp at the trial. But Mapp was decided prior to appeal and we have proof certain that defendants' counsel knew of its existence at the time the appeal was taken. State v. Valentin, supra, [36 N.J. 41, 174 A.2d 737 (1961)] applied Mapp to a pre-Mapp search. This decision was also in existence prior to the appeal. Finally, State v. Smith, supra, [37 N.J. 481, 181 A.2d 761 (1962)] was decided prior to defendants' petition for certification to the Supreme Court. Yet, the issue was not raised. Defendants had ample opportunity to attack their conviction directly. They did not do so, and they will not be permitted now to attack it collaterally."

In Fay v. Noia, supra, 372 U.S. at pp. 438–439, 83 S.Ct. at pp. 848–849, Mr. Justice Brennan spoke for the Supreme Court as follows in regard to the effect of waiver upon the exhaustion of remedies requirement of § 2254:

"Although we hold that the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings, we recognize a limited discretion in the federal judge to deny relief to an applicant under certain circumstances. Discretion is implicit in the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, 'dispose of the matter as law and justice require,' 28 U.S.C. § 2243; and discretion was the flexible concept employed by the federal courts in developing the exhaustion rule. Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. United States ex rel. Smith v. Baldi,

344 U.S. 561, 573, 73 S.Ct. 391, 397, 97 L.Ed. 549 (dissenting opinion). Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks. * * * We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.

"But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L.Ed. 1461—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can freely be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—although of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. * * * At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. * * * A choice made by counsel not participated in by the petitioner does not automatically bar relief."

The foregoing quoted language indicates to the writer, as it apparently did to Cir-

cuit Judge Boreman in United States v. Lovely, 4 Cir. 1963, 319 F.2d 673, 683, cert. den. 1963, 375 U.S. 913, 84 S.Ct. 210, 11 L.Ed.2d 151, that the decision in Noia did not disclose an intention "to strip the federal courts of all discretion to deny relief in a collateral proceeding where, without justifiable reason or excuse, a prisoner has failed to take advantage of the readily available procedures necessary to protect himself at trial or on appeal."

■ Upon the record of prior proceedings in these cases, submitted for my examination, and upon the evidence adduced at the hearing upon the return of the order to show cause issued upon the entertainment by the Court of the petitions for writs of habeas corpus, I find and conclude as follows:

(1) The affidavit upon which the search warrant was issued was legally insufficient;

(2) The evidence seized was admitted upon the trial of the indictments against the petitioners without objection;

(3) The petitioners became aware of the decision in Mapp v. Ohio in ample time to have effectively asserted it in the direct appellate proceedings available to petitioners in the State courts;

(4) Able and experienced retained counsel for the petitioners were made aware of the Mapp decision in time to have asserted it in available State appellate proceedings, but in the exercise of counsel's judgment, concurred in by the petitioners, decided not to raise the Mapp question. Petitioners thereby waived such rights. See Eury v. Huff, 4 Cir. 1944, 141 F.2d 554, 555; United States v. Sorrentino, 3 Cir. 1949, 175 F.2d 721, cert. den. 1949, 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532; Cruzado v. Puerto Rico, 1 Cir. 1954, 210 F.2d 789; United States ex rel. Reid v. Richmond, 2 Cir. 1961, 295 F.2d 83, cert. den. 1961, 368 U.S. 948, 82 S.Ct. 390, 7 L.Ed.2d 344;

(5) Petitioners intelligently waived their right to assert the Mapp rule in post-conviction State proceedings;

(6) Petitioners therefore are precluded from availing themselves of the Mapp decision upon their pending petitions, which are accordingly dismissed, and the writs of habeas corpus prayed for therein will be denied and the order to show cause discharged.

Present order.