[Crim. No. 8174. In Bank. Mar. 12, 1965.]

In re OSCAR SHIPP on Habeas Corpus.

Oscar Shipp, in pro. per., Frederic Campagnoli, under appointment by the Supreme Court, and William E. Holliman for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Derald E. Granberg, Deputy Attorneys General, for Respondent.

TOBRINER, J.—A jury convicted petitioner of the robbery of Bernard Wilkinson and the robbery and first degree murder of Albert Hawley. For the murder of Hawley the jury fixed the penalty at death. We affirmed the judgment on automatic appeal (*People* v. *Shipp* (1963) 59 Cal.2d 845 [31 Cal.Rptr. 457, 382 P.2d 577]; cert.den. 377 U.S. 999 [84 S.Ct. 1927, 12 L.Ed.2d 1049]) and denied a petition for rehearing.

In this proceeding in habeas corpus petitioner contends that the trial court deprived him of rights guaranteed by the Constitution in permitting the introduction of his admissions procured by the police without informing him of his right to counsel and his right to remain silent; that the trial court erroneously allowed the introduction of evidence obtained during an illegal search; and that in the penalty phase the trial court committed error condemned in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33]. In a supplemental petition, in forma pauperis, petitioner urges further that the trial court should have excluded certain of his admissions elicited during police interrogation since they were coerced.

For the reasons stated below we hold that petitioner fails to establish the right to relief by habeas corpus as to the guilt phase of this trial. We conclude, however, that he is entitled to a new penalty trial.

Petitioner rests his first contention, as to the exclusion of his admissions, upon the decision of the United States Supreme Court in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]. We have held, however, that neither *Escobedo* nor *People* v. *Dorado* (1965) *ante,* p. 338 [42 Cal.Rptr. 169, 398 P.2d 361], which rests upon *Escobedo,* may "be applied to cases which have become final prior to the date that the United States Supreme Court rendered the *Escobedo* decision." (*In re Lopez* (1965) *ante,* pp. 368, 372 [42 Cal.Rptr. 188, 398 P.2d 380].) Since the judgment against petitioner became final prior to the United States Supreme Court's decision in *Escobedo,* he may not attack his conviction on the basis of that case.

Petitioner's second contention consists of an assertion that articles belonging to the murder victim, which the prosecution introduced into evidence, had been seized during an illegal search of his room. (See *People* v. *Shipp* (1963) 59 Cal.2d 845, 850, fn. 1 [31 Cal.Rptr. 457, 382 P.2d 577].) Upon petitioner's automatic appeal we held that although the

police officers had not obtained a warrant and although the evidence did not clearly demonstrate a valid consent to the search, the introduction of the evidence constituted harmless error. We concluded that it was not reasonably probable that a result more favorable to the petitioner would have been reached if the trial court had excluded the evidence. ▉ The admission of evidence obtained by an illegal search and seizure does not require reversal if it constitutes harmless error. (*People* v. *Parham* (1963) 60 Cal.2d 378, 384-386 [33 Cal.Rptr. 497, 384 P.2d 1001].) ▉ Furthermore, we have held that the admission of illegally obtained evidence may not be challenged on collateral attack. (*In re Lessard* (1965) *ante,* p. 497 [42 Cal.Rptr. 583, 399 P.2d 39]; see *In re Harris* (1961) 56 Cal.2d 879, 880 [16 Cal.Rptr. 889, 366 P.2d 305], Traynor, J., concurring.)

▉ Urging, thirdly, that the trial court improperly admitted his coerced and involuntary admissions, petitioner narrates the account of the alleged coercion with great particularity. Stating that at the time he was but 19 years old, he claims that the officers arrested him late in the evening of January 2, 1962, and took him to the city police station. Upon his request to be permitted to telephone his brother, the officer told him that he could not do so until he had been booked. He alleges that the police did not advise him of the nature of the charge, of his right to an attorney or of his right to remain silent. After the expiration of the questioning period and the booking process, the police allowed him to sleep only for three hours. In the morning, according to petitioner, he again asked to telephone his brother but encountered a second refusal on the ground that "all phone calls are made before one is assigned sleeping quarters."

Petitioner points out that since the police took his shoes for analysis, he was forced to go without them; he was not allowed to shower; he was fed on the average of once a day for four days. He alleges that a police doctor told him that the failure to take a lie detector test indicated guilt and that the police explained that since he was young seven years in jail would be "nothing."

Petitioner further states that on January 4, after being handcuffed to a chair for four and one-half hours, an interrogation session began and that during its course the police struck him several times. After his transfer to the county jail on January 5, the police continued the interrogation. On January 8 the police handcuffed him and "forced" him to accompany them to "the library" for still further interroga-

tion. Petitioner contends that at this time, after "he could not physically nor emotionally withstand the unceasing efforts of the police to extract a statement" from him, he made his admissions which, unknown to him, were recorded. He still refused to sign a statement.

At the trial the prosecution introduced the tape recording of the admissions into evidence but the defense interposed no objection based upon their involuntary rendition. To lay a foundation for the admission of the tape recording one of the police officers who had been involved in the interrogation testified that petitioner's statements were given freely and voluntarily and that the police neither used force or violence against petitioner nor promised petitioner immunity or reward. A police officer testified that petitioner was advised of the nature of the charge and of his rights to an attorney and to remain silent. Furthermore, the record shows that petitioner was brought before a magistrate before he made his admissions. Although, as we have noted, petitioner claims that he was not permitted to make a telephone call, he admitted on cross-examination, contrary to his statement in his petition, that, after the booking, he at no time asked to make a call.

At trial, petitioner testified that his admissions were not voluntary, but when asked if someone was "twisting [his] arm," he replied that no one did so. He stated that he was brought to "the library" for interrogation against his will, but admitted that the police used no force. At no time did petitioner testify about the police activities which, in his petition, he alleged occurred. No further evidence bore upon the voluntariness of the admissions.

The trial court charged the jury that it was to decide whether the admissions were voluntarily rendered. On appeal petitioner did not urge such involuntariness; in his petition he does not state why he did not tender the issue at trial or on appeal.[1]

We set forth three fundamental reasons why the writ should not issue: first, habeas corpus cannot serve as a substitute for appeal in the absence of special circumstances; second, petitioner neither specifies such special circumstances

---

[1] Although the record does not indicate that the trial judge made an independent determination that petitioner voluntarily gave the admissions, the procedures cannot be attacked on the basis of *Jackson* v. *Denno* (1964) 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908], because petitioner neither objected to the introduction of these admissions nor urged any substantial contention as to their voluntariness during the trial, nor did he urge the point upon appeal.

nor alleges the reasons for his delay in this late presentation, and, third, the recent decisions of the United States Supreme Court do not call for any different resolution of the issue.

The classic limitations upon the writ of habeas corpus in this state have been stated in the often cited opinion, *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513] : "The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." To the same effect: *In re Chapman* (1954) 43 Cal.2d 385, 390 [273 P.2d 817] ; *In re Mitchell* (1961) 56 Cal.2d 667, 671 [16 Cal.Rptr. 281, 365 P.2d 177]. (See Granucci, *Review of Criminal Convictions by Habeas Corpus in California* (1963) 15 Hastings L.J. 189, 194-198.)

*Dixon* forcefully applies to the instant case since it, too, involved an attempt to secure the writ upon the basis that the petitioner's confession, which the prosecution introduced, had been obtained by coercion. There, too, petitioner contended that real evidence upon which the prosecution relied had been procured by an unlawful search and seizure. The court disposed of the contentions on the ground that "the matters of which petitioner complains were before the trial court and . . . there was evidence which would have supported findings that there was no violation of his constitutional rights in connection with his confession or the search and seizure." (P. 762.) Since these issues were argued during the trial and testimony on these matters was conflicting petitioner could not relitigate them in a proceeding in habeas corpus.

We have consistently held that an issue which is raised in the trial court, and upon which conflicting testimony develops, cannot serve as a basis for habeas corpus; we cannot sanction piecemeal presentation or split adjudication of such issues between trial and post-conviction procedure. We have said: "To permit petitioner to now relitigate that issue would encourage defendants charged with crimes, the jurisdiction over which might depend upon complex factual determinations, to withhold the raising of those issues until after they had attempted to obtain a favorable result at a trial on the merits. . . ." (*In re Carmen* (1957) 48 Cal.2d 851, 855 [313 P.2d 817].)

Petitioner presents no special circumstances which would rescue his case from the general rule. Petitioner did

not object to the admission of the confession at trial; even though his case came to this court on automatic appeal he did not urge the issue of coercion. The officers testified that the statements were voluntarily given; petitioner offered no contradictory testimony. When petitioner at one point denied that he made the statements voluntarily, the prosecution specifically asked if someone had been "twisting [his] arm," and he denied that anyone did so. Petitioner does not now indicate any evidence of coercion beyond his bare allegations. He does not contend that evidence now exists proving coercion which was not available to him at trial. Nor does petitioner suggest that new standards of coercion have been created by the courts after his judgment became final so that he may rest upon that excuse for not fully presenting the issue at the trial level. (Cf. *Reck* v. *Pate* (1961) 367 U.S. 433 [81 S.Ct. 1541, 6 L.Ed.2d 948].) We conclude that petitioner submits no special circumstances to except his request for relief from the general rule or which justifies an extraordinary remedy.

The cases clearly hold that petitioner must not only allege with particularity the facts upon which he would attack the final judgment but likewise his reasons for the delayed presentation of such facts. Thus *Dixon* states: "Petitioner has the burden in this proceeding of alleging and proving all facts upon which he relies to overturn the judgment and of giving a satisfactory reason for not resorting to his remedy of appeal. (See *In re Swain*, 34 Cal.2d 300, 304 [209 P.2d 793]; *In re Manchester*, 33 Cal.2d 740, 742 [204 P.2d 881]; *In re Connor*, 16 Cal.2d 701, 711 [108 P.2d 10].)'' (*In re Dixon* (1953) 41 Cal.2d 756, 760 [264 P.2d 513].) Likewise, as we stated in *In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793]: "We are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned and that he fully disclose his reasons for delaying in the presentation of those facts." Petitioner does not so much as attempt to state any reasons for the delay in his presently sought elaboration of the issue of coercion, an issue which had been explored in the proceedings of the trial court.

Finally, we do not believe that the recent decisions of the United States Supreme Court involving federal post-conviction adjudication (*Fay* v. *Noia* (1963) 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837]; *Townsend* v. *Sain* (1963) 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770]; *Sanders* v. *United States* (1963) 373 U.S. 1 [83 S.Ct. 1068, 10 L.Ed.2d 148]) induce a result

different from that which we have reached. We are not compelled, of course, to conform our post-conviction procedure to that of the federal jurisdiction.[2] We recognize, however, the desirability of the maximum integration of such process in order to avoid the possibility of wasteful duplication.[3] Even if we were to adopt in this court the standards of waiver of a constitutional right in federal habeas corpus proceedings announced in the above-mentioned cases, we would nevertheless conclude that petitioner has not established the basis for the issuance of the writ.

The United States Supreme Court in *Fay* v. *Noia* (1963) 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837], holds *inter alia* that under the federal habeas corpus statute power reposes in the federal courts to grant relief despite the petitioner's failure to have pursued a state remedy no longer available at the time of his application. But the Supreme Court also recognizes ''a limited discretion in the federal judge to deny relief . . . under certain circumstances.'' (*Id.* at p. 438.) The court states that ''the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so

---

[2]The United States Supreme Court has never reversed a state court's judgment denying post-conviction remedies and either directed the state court to take jurisdiction or released a prisoner on the ground that the state court was compelled to accept jurisdiction. Recent authorities have indicated that states are not constitutionally required to provide post-conviction remedies. (Schaefer, *Federalism and State Criminal Procedure* (1956) 70 Harv.L.Rev. 1, 16; Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners* (1963) 76 Harv.L.Rev. 441, 492-493; Note, *Federal Habeas Corpus Treatment of State Factfinding: A Suggested Approach* (1963) 76 Harv.L.Rev. 1253, 1269; Note, *Federal Habeas Corpus for State Prisoners: The Isolation Principle* (1964) 39 N.Y.U. L.Rev. 78, 103, fn. 145; see *Woods* v. *Nierstheimer* (1946) 328 U.S. 211, 217 [66 S.Ct. 996, 90 L.Ed. 1177]; *White* v. *Ragen* (1945) 324 U.S. 760 [65 S.Ct. 978, 89 L.Ed. 1348]; but see *Mooney* v. *Holohan* (1935) 294 U.S. 103, 113 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406]; *Young* v. *Ragen* (1949) 337 U.S. 235, 238 [69 S.Ct. 1073, 93 L.Ed. 1333]; *Taylor* v. *Alabama* (1948) 335 U.S. 252, 272 [68 S.Ct. 1415, 92 L.Ed. 1935] (Frankfurter, J., concurring); Hart & Wechsler, The Federal Courts and the Federal System (1953) 395-399, 474-477, 512-517; Note, *Effect of the Federal Constitution in Requiring State Post-Conviction Remedies* (1953) 53 Colum.L.Rev. 1143.

Nothing in *Fay* v. *Noia* (1963) 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837], or in *Townsend* v. *Sain* (1963) 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770], indicates that states must provide the post-conviction remedies required of the federal courts (*Sewell* v. *Warden of Maryland Penitentiary* (1964) 235 Md. 615 [200 A.2d 648, 649]; *Anderson* v. *Gladden* (1963) 234 Ore. 614 [383 P.2d 986, 993] (concurring opinion)).

[3]See *Mahurin* v. *Nash* (1963) 321 F.2d 662; *Hunt* v. *Warden, Maryland Penitentiary* (1964) 335 F.2d 936, 942; *People* v. *Wilson* (1963) 13 N.Y.2d 277, 282 [246 N.Y.S.2d 608, 196 N.E.2d 251] (Fuld, J., concurring); Becker, *Collateral Post-Conviction Review of State and*

doing has forfeited his state court remedies.'' (*Ibid.*) Chief Justice Warren explains this concept in *Townsend* v. *Sain* (1963) 372 U.S. 293, 317 [83 S.Ct. 745, 9 L.Ed.2d 770]: ''The standard of inexcusable default set down in *Fay* v. *Noia* adequately protects the legitimate state interest in orderly criminal procedure, for it does not sanction needless piecemeal presentation of constitutional claims in the form of deliberate bypassing of state procedures.''

The determination of the inexcusable default must be found in the separate substance of each case. ''Each case must stand on its facts.'' (*Fay* v. *Noia, supra,* at p. 440.)[4] Noia's choice was a Hobson's choice, not an inexcusable default. ''His was the grisly choice whether to sit content with life imprisonment or to travel the uncertain avenue of appeal which, if successful, might well have led to a retrial and death sentence.'' (*Ibid.*) On the other hand the relinquishment of a constitutional right by petitioner's counsel does not necessarily bind him: ''A choice made by counsel not participated in by the petitioner does not automatically bar relief.'' (*Id.* at p. 439.)

Since petitioner does not explain why he now, for the first time, alleges facts bearing on the voluntariness of the confession, the record must control; it leaves us no alternative but to conclude that petitioner inexcusably bypassed normal state procedure. No mystery shrouded the subject matter of the confession or the facts enveloping the manner in which it was obtained. The issue was openly explored in petitioner's presence; he himself answered questions about it and even testified that no one had been ''twisting [his] arm.'' The record does not show that the petitioner's attorney waived a federal right unbeknown to petitioner. We must conclude that petitioner failed to utilize the available state procedure of trial and appeal; we cannot hypothesize that he did not individually participate in that choice.

*Federal Criminal Judgments on Habeas Corpus and on Section 2255 Motions—View of a District Judge* (1963) 33 F.R.D. 452, 490-491; Meador, *Accommodating State Criminal Procedure and Federal Postconviction Review* (1964) 50 A.B.A.J. 928; Freund, *Remarks, Symposium; Habeas Corpus—Proposals for Reform* (1964) 9 Utah L.Rev. 27, 30.

[4]Cases finding a waiver include *Nash* v. *United States* (5th Cir. 1965) 342 F.2d 366; *United States* v. *Lovely* (1963) 319 F.2d 673; *United States* ex rel. *Kaiser* v. *Mahan* (1964) 233 F.Supp. 1, 6; *United States* v. *Winstead* (1964) 226 F.Supp. 1010, 1013; *Ex parte Prince* (Tex.Crim. App. 1963) 367 S.W.2d 687; see *Sewell* v. *Warden of Maryland Penitentiary* (1964) 235 Md. 615 [200 A.2d 648]; Note, *Federal Habeas Corpus for State Prisoners: The Isolation Principle* (1964) 39 N.Y.U.L.Rev. 78, 86-90, 133.

True, the petitioner was asked some questions as to coercion on cross-examination, and he may not at that moment have understood the exact procedure for further elaboration, but petitioner's counsel was present and petitioner was completely free to introduce any further facts with skilled guidance. Petitioner's choice was not Hobson's; it was a voluntary default.

The issue of coercion here, partially exposed at trial, could not be embalmed for the purpose of transmigration to post-conviction procedures. To condone such piecemeal presentation and to sanction split adjudication between trial and post-conviction process would be to place a premium on covert retention of issues for post-judgment litigation in the event of defeat upon trial and appeal. It would destroy the "orderly criminal procedure" which *Townsend* v. *Sain, supra,* 372 U.S. 293, sought to preserve.

Turning, finally, to petitioner's penalty trial, we note that the trial judge gave the jury an instruction condemned in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33]. The judge in the instant case told the jury that in determining the penalty to be imposed it might consider that a defendant sentenced to death or life imprisonment may be pardoned or have his sentence reduced by the Governor and that "a prisoner serving a life sentence may be paroled, but not until he has served the minimum term of imprisonment provided by law." The prosecutor argued, "when you say life imprisonment, it doesn't mean that, it means the so-called minimum, which is fixed by law and which may be also fixed by the Parole Board." He further urged the jury to consider the fact that life imprisonment does not mean that the defendant would never be released from prison. *Morse* held this type of argument improper.

We held in *In re Jackson* (1964) 61 Cal.2d 500 [39 Cal. Rptr. 220, 393 P.2d 420] that such errors could be reached by collateral attack and that the *Morse* rule could be retroactively applied.[5] Under *People* v. *Hines* (1964) 61 Cal.2d 164, 170 [37 Cal.Rptr. 622, 390 P.2d 398], we must reverse the judgment insofar as it relates to the penalty, since "substantial deviation from the standards established in *Morse* has occurred."

The writ is granted as to the penalty trial of petitioner. The remittitur issued in Crim. No. 7236, *People* v. *Shipp*

---

[5]In *In re Lopez* (1965) *ante,* pp. 368, 383, fn. 23 [42 Cal.Rptr. 188, 398 P.2d 380], we explain our reasons for applying *Morse* retroactively on collateral attack although not so applying *Escobedo.*

(1963) 59 Cal.2d 845 [31 Cal.Rptr. 457, 382 P.2d 577], is recalled and the judgment imposing the death penalty is reversed insofar as it relates to the penalty. In all other respects the judgment is affirmed. Petitioner is remanded to the custody of the Superior Court of Los Angeles County for a new penalty trial.

Traynor, C. J., Peters, J., and Peek, J., concurred.

BURKE, J.—I concur in the affirmance of the judgment in all respects other than as to penalty, but I dissent from the granting of the writ as to the penalty trial for the reasons stated in my dissent in *In re Lessard, ante,* pp. 497, 513 [42 Cal.Rptr. 583, 399 P.2d 39].

Schauer, J.,† concurred.

McCOMB, J.—I agree with Mr. Justice Burke's concurring and dissenting opinion.

It is my view that this court should overrule its holding in *People v. Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33].

Subsequent events have demonstrated the error in the holding in that case. The defendant was returned for a new trial on the penalty issue and was sentenced to life imprisonment. While awaiting transportation to the state penitentiary he strangled to death another man and received the death penalty for the second murder. Obviously, if the verdict of the jury in the first *Morse* case had been affirmed, one man would be alive who has been murdered by the defendant. (See Mr. Justice Schauer's and my concurring and dissenting opinions in *People v. Hines,* 61 Cal.2d 164, 175, 182 [37 Cal. Rptr. 622, 390 P.2d 398]; my dissenting opinion in *People v. Dorado, ante,* pp. 338, 361 [42 Cal.Rptr. 169, 398 P.2d 361]; and dissenting opinion of Mr. Justice Burke, joined by Mr. Justice Schauer, at p. 364.)

The judiciary should consider the protection of innocent people in this state and endeavor to support law enforcement officers in their efforts to prevent the increase of crimes now taking place at an alarming rate in this and other states of the United States. The prevention of crime may be best enforced by the prompt conviction and punishment of criminals, and we should endeavor in every legitimate manner to

---

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

protect our innocent citizens and to avoid unnecessary reversals of convictions of manifestly guilty criminals, thereby better protecting the law-abiding public.

Petitioner's application for a rehearing was denied April 6, 1965. Mosk, J., did not participate therein. McComb, J., and Burke, J., were of the opinion that the petition should be granted.