[Crim. No. 26380. Second Dist., Div. One. Dec. 2, 1975.]

In re JACK KIRSCHKE on Habeas Corpus.

COUNSEL

Roger S. Hanson, Griffith D. Thomas, George T. Davis and Joseph C. Morehead for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Clifford K. Thompson, Jr., Deputy Attorney General, for Respondent.

OPINION

**THOMPSON, J.**—A jury found petitioner Jack Kirschke guilty of two counts of murder ·for the killing of his wife and her lover and found the murder to be of the first degree. We affirmed the resulting judgment of conviction in an unpublished opinion (Crim. No. 16044) and the judgment became final upon denial of Kirschke's petition for hearing to the Supreme Court. In these collateral attacks upon the judgment, Kirschke asserts that it should be, vacated for error of constitutional dimension which denied him a fair trial. He contends: (1) the conviction is the product of false testimony of De Wayne A. Wolfer, a criminalist employed by the Los Angeles Police Department, who, at trial, supplied damaging expert testimony on ballistics, acoustics, and anatomy; (2) Kirschke was ineffectively represented by trial counsel; (3) newly discovered evidence refutes prosecution evidence at trial which undermined Kirschke's attempt to establish an alibi and otherwise points to his innocence; (4) various issues decided against him on appeal were wrongly decided; and (5) various other issues which could have been raised on appeal, but which were not, compel vacation of the judgment.

We conclude that while Wolfer negligently presented false demonstrative evidence in support of his ballistics testimony, Kirschke had ample opportunity to rebut the demonstrative evidence at trial so that the

negligently false evidence is not a basis for collateral attack. (*In re Manchester,* 33 Cal.2d 740, 742 [204 P.2d 881]; *In re Waltreus,* 62 Cal.2d 218, 221 [42 Cal.Rptr. 9, 397 P.2d 1001], cert. den., 382 U.S. 853 [15 L.Ed.2d 92, 86 S.Ct. 103].) We conclude further that while Wolfer's acoustical testimony was false and while his testimony on qualifications as an expert on anatomy was also false and borders on the perjurious, the opinion evidence given by Wolfer dealing with acoustics and anatomy pertained to essentially irrelevant matter and beyond a reasonable doubt could not have affected the outcome of the trial. Finally, we conclude there is no showing of ineffectiveness of trial counsel as a demonstrable reality (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]), that Kirschke has not shown any newly discovered evidence, and that he is barred from raising on collateral attack issues that were decided or could, if raised, have been decided on appeal. (*In re Shipp,* 62 Cal.2d 547, 552 [43 Cal.Rptr. 3, 399 P.2d 571], cert. den., 382 U.S. 1012 [15 L.Ed.2d 528, 86 S.Ct. 623].) Accordingly, we deny the relief sought by petitioner.

### Testimony at Trial

In essence, the evidence at trial established Kirschke's motive and opportunity to kill. The victims were Kirschke's wife and her lover, killed on the Kirschke bed while apparently engaged in sexual activity. Kirschke had shown great, although private, resentment at the notorious nature of his wife's affair because of its potential to frustrate his efforts to secure a judicial appointment from a newly elected governor whom he had vigorously supported. An exculpatory statement of Kirschke to investigators of the crime in which he attempted to establish an alibi was proved false. Kirschke attempted to show his presence at the Los Angeles airport at a critical time by oral reference to a parking receipt containing a time stamp. Investigatiun showed that the receipt could not have been issued at the time stated by Kirschke.

The circumstantial weight of motive and opportunity was buttressed by evidence of the murder weapon. The victims were killed by shots from a .38 caliber gun. A revolver of that caliber had been released to Kirschke after he, as a deputy district attorney, had successfully prosecuted a defendant who had used it in a crime. Kirschke admitted that the revolver was kept loaded in a bed table next to the murder bed. While the revolver was missing after the murder and was never found, cash and other small items of considerable value in plain sight in the bedroom remained after the killings. A statement by Kirschke to his

secretary after the murders indicated his desire to suppress evidence that the revolver existed.

The .38 caliber revolver released to Kirschke had, in the past, been subjected to ballistic examination and test bullets had been fired from it. De Wayne Wolfer, a criminalist employed by the Los Angeles Police Department having qualified as an expert in ballistics, expressed his opinion that the earlier test bullets so matched the murder slugs that the .38 caliber revolver and no other in the world was the murder weapon. Wolfer illustrated his opinion by enlarged photographs of the test and murder bullets. While Kirschke had employed his own ballistics expert who examined the test and murder bullets at length and who was present at counsel table while Wolfer was questioned on direct and cross-examination, no question was raised by Kirschke at trial concerning the validity of the photographs. The defense expert on ballistics did not testify.

A sideshow developed at trial. Postmortem lividity on the body of the male victim indicated that his body had rested on its back on the bed for at least two hours after death, while the body was discovered face down on the floor beside the bed. Bloodstains on a wall indicated that the body had rolled from the bed. The defense hypothesized that the killer had moved the body after death at a time which tended to support Kirschke's alibi although by no means to establish it. To counter the hypothesis, the prosecutor recalled Wolfer, this time qualifying him as an expert in anatomy and acoustics as well as ballistics.

Wolfer's acoustical testimony theorized that the murder weapon may have been silenced with a towel or a lawn mower muffler in a fashion which would have prevented its discharge from being heard so that witness reports of loud noises in the early morning hours may have referred to the falling body rather than gunshots.

Wolfer qualified as an expert on anatomy by reference to his university education. He testified that, as an undergraduate, he had taken a course in human anatomy in which he and another student had dissected a cadaver from top to bottom. Having qualified as an expert, Wolfer expressed his opinion that a shift of body fluids after death could have so altered the center of gravity of the body as to cause it to roll from the bed. To emphasize its theory, and undoubtedly to present a dramatic conclusion to its case, the prosecution conducted an in-court demonstration of the Wolfer theory. The murder bed, round in shape, was brought

into the courtroom and placed before the jury. A male and female police officer acted the part of the victims of the crime while the path of the murder bullets was traced. The male officer then rolled from his back on the bed, landing face downward beside it.

A jury found Kirschke guilty of two counts of first degree murder. On appeal from the judgment based upon the verdict, we concluded that the prosecution's demonstration was questionable rebuttal but that error, if any, inherent in it was harmless. We considered and rejected 17 other contentions of error and affirmed the conviction.

### Hearing on Order to Show Cause

Concurrently with his appeal to this court, Kirschke filed a petition for habeas corpus and *coram vobis* with the Supreme Court. The high court transferred the petition to us and we issued an order to show cause returnable in the Los Angeles Superior Court where the case had been tried. Judge George Dell of that court conducted an extensive evidentiary hearing on the petition and denied the petition.

Pursuant to *In re Hochberg,* 2 Cal.3d 870, 873-874 footnote 2 [87 Cal.Rptr. 681, 471 P.2d 1], we have made our independent examination and appraisal of the evidence taken in the superior court. That independent examination and appraisal leads us to the same factual conclusions drawn by Judge Dell.

Evidence produced at the hearing on the order to show cause established that the enlarged photographs of the test and murder bullets used by Wolfer to demonstrate his opinion that the bullets were fired from the same gun do not do so. The evidence convinces, however, that the error is not deliberate. Wolfer compared the bullets under a microscope, reaching his conclusion of identity of weapon. He interrupted his work and returned later to take the photographs. The error is established as due to the interruption.

Court appointed firearms experts, testifying at the order to show cause, were of the opinion that the .38 caliber revolver released to Kirschke may have been the murder weapon. They were not able to make a positive identification because "fine identifying individual characteristics which are apparent in [the] photographs are now obscured or removed by what appears to be a combination of oxidation and wear."

Evidence on Wolfer's educational qualifications in anatomy, resting upon his dissection of a cadaver, is conflicting. While Wolfer's "memory may not be correct," the evidence does not establish that he "actually lied about his dissection experience." "It is manifest that Wolfer knew very little about what he was talking about when he explained the shifting of 'body fluids' and undertook to explain the quantum of sound reduction that could be achieved by use of a silencer on a handgun." The evidence, however, falls short of establishing that Wolfer actually lied in expressing his anatomical and acoustical opinion.

The evidence on the order to show cause does not demonstrate that Kirschke's trial counsel was ineffective. Kirschke argued the ineffectiveness from his counsel's asserted failure to have his own examination of the death and test bullets. He did not, however, call trial counsel as a witness.

*Ballistics Testimony*

██ Kirschke argues that the demonstrative evidence in the form of the enlarged photographs of the test and murder bullets is perjurious, requiring that the judgment be overturned. He argues alternatively that if the error in the evidence is negligent or inadvertent rather than perjurious, the judgment must nevertheless be vacated because the negligent or inadvertent use of demonstrative evidence prepared by an agent of the state is the equivalent of the suppression of evidence favorable to the accused within the meaning of *People* v. *Ruthford,* 14 Cal.3d 399 [121 Cal.Rptr. 261, 534 P.2d 1341], and *In re Ferguson,* 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234].

██ "A judgment of conviction based on testimony known by representatives of the state to be perjured deprives the defendant of due process of law . . . and may be attacked on habeas corpus . . . . In making such an attack, however, [the] petitioner must establish by a preponderance of the evidence that perjured testimony was adduced at his trial . . . ." (*In re Imbler,* 60 Cal.2d 554, 560 [35 Cal.Rptr. 293, 387 P.2d 6], cert. den., 379 U.S. 908 [13 L.Ed.2d 181, 85 S.Ct. 196].) "An honest error in expert opinion is not perjury even though further diligence and study might have revealed the error." (*In re Imbler, supra,* 60 Cal.2d at p. 567.) ██ Here Kirschke failed to establish by a preponderance of the evidence that Wolfer's error in preparation of the enlarged photographs was anything other than an honest mistake.

■ Negligent presentation of false prosecution evidence is also a basis for habeas corpus, but only if it results in a denial of a fair trial. "Unless [the] negligence has obstructed the defendant in challenging the case against him, it is not a ground for collateral attack." (*In re Imbler, supra,* 60 Cal.2d at p. 567; see also *In re Manchester, supra,* 33 Cal.2d 740, 742; *In re Waltreus, supra,* 62 Cal.2d 218, 221.) ■ Here the negligence of Wolfer in the preparation of the demonstrative evidence did not obstruct Kirschke's ability to challenge the case against him. The test and murder bullets were available to Kirschke and his expert throughout the trial and were previously made available on a discovery motion. (See *In re Imbler, supra,* 60 Cal.2d at p. 567.) For reasons of his own, Kirschke's trial counsel did not elect to call the defense ballistics expert as a witness.

Kirschke argues that the rule of *Imbler* and related cases has been impliedly overturned by *In re Ferguson, supra,* 5 Cal.3d 525, and *People v. Ruthford, supra,* 14 Cal.3d 399, holding that the suppression by the prosecution of evidence favorable to the accused may deny due process of law whether the failure to disclose the evidence is deliberate, negligent, or inadvertent. *Ferguson* and *Ruthford* are not inconsistent with *Imbler.* Suppression of evidence favorable to a defendant of necessity obstructs the ability of the defense to challenge the prosecution's case. Negligently erroneous testimony of a state agent does not obstruct the defendant's ability to defend where, by discovery or otherwise, he is afforded the means to establish the error in the testimony.

We thus conclude that Wolfer's negligent error in preparing the enlarged photographs used to buttress his opinion testimony does not support Kirschke's collateral attack upon the judgment against him.

### Acoustics and Anatomical Testimony

■ Kirschke attacks Wolfer's testimony on the acoustics of silencers as perjuriously or negligently false and mounts the same offense against Wolfer's opinion of change in a dead body's center of gravity based upon postmortem fluid shift plus Wolfer's testimony on his qualifications to give the opinion.

Unquestionably, Wolfer's opinion testimony on acoustics and anatomy was negligently false. His testimony of his educational qualifications borders on perjury and is, at least, given with a reckless disregard for the

truth. ■ False, or even perjurious, prosecution testimony is an adequate ground for collateral attack, however, only when it "may have affected the outcome of the trial." (*In re Imbler, supra,* 60 Cal.2d 554, 560.) ■ Here the acoustical and anatomical testimony could not, beyond a reasonable doubt, have affected the outcome of the trial so that it does not support Kirschke's collateral attack upon the judgment. (See *People* v. *Ruthford, supra,* 14 Cal.3d 399, 408.) The testimony did not concern the heart of the matter. The prosecution's very strong although circumstantial case was made when it established Kirschke's motive, his resentment of the notoriety of his wife's affair, his opportunity, his false alibi, and his possession of the murder weapon. The Wolfer testimony on acoustics and anatomy merely exemplifies prosecution tactical error in overtrying a good case by means not adding to its strength. As indicated in our opinion on appeal (Crim. No. 16044), Kirschke's alibi is far from established if the sounds heard early in the morning hours surrounding the murder are treated as gunshots. The manner in which the body of the male victim fell from the bed after two hours rest upon it similarly adds or detracts nothing from the case. At most, it is an unexplained phenomenon which is virtually irrelevant to Kirschke's guilt or innocence.

### Newly Discovered Evidence

■ In support of the *coram vobis* aspects of his petition, Kirschke asserts that newly discovered evidence compels vacation of the judgment against him. As best we can distill the 142-page petition, the "newly discovered evidence" asserted by Kirschke is: (1) evidence that Wolfer falsified his educational background; (2) evidence that the ballistic photographs are erroneous; (3) evidence obtained in a deposition in an unrelated case that Wolfer is "fully and absolutely ignorant of literally dozens of basic terms and principles in the fields of mechanics, physics, acoustics and mathematics" and is unable to compute a center of gravity; and (4) Kirschke's own testimony at a State Bar hearing in which he attempted to rehabilitate his alibi by stating that he then remembered that he had parked in a different lot at the Los Angeles airport so that the evidence which destroyed his alibi is no longer pertinent.[1]

---

[1]Inferentially by a footnote in a document entitled "Traverse to Response—Supplemental Points and Authorities in Support of Issuance of Order to Show Cause," Kirschke states that a medical expert, who testified at trial that postmortem lividity can become fixed in as little as two hours, testified at the superior court hearing on the writ that the minimum fixation time is six hours. At oral argument, Kirschke's counsel contended that the latter testimony is newly discovered evidence conclusively establishing Kirschke's innocence. The matter of fixation of postmortem lividity was thoroughly explored at trial. Thus, unless the new opinion points "unerringly" to innocence, it is not a basis for

Our discussion of the Wolfer testimony on ballistics, acoustics, and anatomy, concluding that its falsity is not an adequate ground of collateral attack, is equally applicable to Kirschke's contention that, as newly discovered evidence, the falsity requires that the judgment be vacated. What remains is Kirschke's self-serving testimony at the State Bar hearing. ■ The writ of *coram vobis* will be granted on the basis of newly discovered evidence only if the petitioner "can 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits ...' " (*In re Imbler, supra,* 60 Cal.2d 554, 570), or if he shows new evidence which points "unerringly to [his] innocence." (*In re Branch,* 70 Cal.2d 200, 214-215 [74 Cal.Rptr. 238, 449 P.2d 174].) ■ Here Kirschke is asserting a fact known only to him. His failure to assert it at trial is unexplained. The self-serving statement does not point unerringly to innocence.

### Ineffectiveness of Trial Counsel

■ Kirschke contends that he was ineffectively represented by his lawyer at trial because his counsel failed to investigate and develop the falsity of the demonstrative evidence used by Wolfer to explain his ballistics testimony. To succeed in that contention, Kirschke must establish ineffectiveness of trial counsel as a demonstrable reality and not by speculation. (*People* v. *Reeves, supra,* 64 Cal.2d 766, 774.) Here Kirschke can prevail only if we speculate that it was trial counsel error and not trial counsel tactics that prevented his calling a defense ballistics expert as a witness. Since a tactical decision, based upon investigation, is not ineffective representation (*People* v. *Gardner,* 71 Cal.2d 843, 851 [79 Cal.Rptr. 743, 457 P.2d 575]), Kirschke's contention fails.

### Issues That Were Raised or Could Have Been Raised on Appeal

The remainder of Kirschke's petition seeks further review of issues decided adversely to him on appeal or which could have been, but were not, included in the appeal. Those issues are not available on collateral attack. (*In re Shipp, supra,* 62 Cal.2d 547, 552.)

---

*coram vobis* relief. (*In re Imbler, supra,* 60 Cal.2d 554, 570; *In re Branch, infra,* 70 Cal.2d 200, 214-215.) Evidence points unerringly to innocence only when it undermines the entire case of the prosecution. (*In re Lindley,* 29 Cal.2d 709, 723-724 [177 P.2d 918]; see also *In re Imbler, supra,* 60 Cal.2d 554, 569.) Here the "newly discovered evidence" does no more than cast doubt upon one item of expert testimony received at trial. Nothing would have impelled Kirschke's acquittal if the evidence at trial were the same as the testimony produced at the hearing on the petition for writ.

## Disposition

The petitions for habeas corpus and *coram vobis* are denied.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 29, 1975, and petitioner's application for a hearing by the Supreme Court was denied January 28, 1976.