[Crim. No. 7932. In Bank. Jan. 15, 1965.]

In re EUGENE R. WALTREUS on Habeas Corpus.

Morris Lavine for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles) and Samuel Mayerson, Deputy District Attorney, for Respondent.

TRAYNOR, C. J.—Petitioner was convicted of assault with a deadly weapon, using and placing an explosive in or near buildings with intent to destroy them, and conspiracy to commit such acts and to obtain property by means of threats of injury to the owner and his property.[1] The judgment was affirmed (*People* v. *Darnold* (1963) 219 Cal.App.2d 561 [33 Cal.Rptr. 369]), petitions for rehearing and for hearing by this court were denied, and the United States Supreme Court denied certiorari (*Waltreus* v. *California*, 376 U.S. 959 [84 S.Ct. 981, 11 L.Ed.2d 977]). Petitioner now seeks a

---

[1]Petitioner was jointly indicted for the offenses with five other defendants, Brajevich, Misso, Le Fave, Darnold, and Lenahan. After the jury was sworn and before testimony was taken the charges against Brajevich were dismissed upon the prosecution's request. The charges against Misso were subsequently dismissed. Le Fave was found not guilty, and the remaining defendants were found guilty.

writ of habeas corpus on the ground, among others, that his conviction was obtained by perjured testimony knowingly used by the prosecution.

It is unnecessary to set forth in detail the evidence reported in about 3,500 pages of transcript. In brief, there was evidence that petitioner induced others to commit an assault upon Joseph Peskin and to place dynamite in his business establishments, that petitioner sought by such means to compel Peskin to return a business to Le Fave, and that petitioner conspired with others to commit the offenses and to obtain property from Peskin by means of threats to his person.

One of the principal prosecution witnesses, Brajevich, testified that at various meetings held at petitioner's office and elsewhere plans were made relating to the assault and the use of dynamite. Petitioner contends that Brajevich's testimony that he "had been at the office of the petitioner when the alleged arrangements were made" was perjured and was known by the prosecution to be perjured. He alleges that other witnesses testified that petitioner had vacated the office before the dates of the asserted meetings. He also alleges that Brajevich testified that the meetings took place in one of two small offices at the rear of the main office, that no such small offices exist, and that this fact was known or should have been known by the officers investigating the case.

An application for habeas corpus on the ground of perjured testimony must not only set forth the facts that prove perjury and knowledge thereof by the prosecution, but must also show that those facts existed independently of the contradictions appearing at the trial. (*In re Manchester* (1949) 33 Cal.2d 740, 742 [204 P.2d 881].) It must also appear that the petitioner had no opportunity to present the alleged true matter at the trial; that is, that there was such suppression of the truth by the authorities that he was precluded from discovering it and using it at the trial. (*In re Manchester, supra,* at p. 742; *Green* v. *United States* (1st Cir. 1958) 256 F.2d 483, 484; see *In re Imbler* (1963) 60 Cal.2d 554, 565 [35 Cal.Rptr. 293, 387 P.2d 6].)

The allegations regarding the asserted perjury by Brajevich do not warrant the appointment of a referee, for the matters relied on were either brought out at the trial or were known by petitioner at the time of trial and could have been shown.

In claiming that the prosecution knowingly presented

. . . .

perjured testimony, petitioner points to testimony by Braje-
vich concerning the identity of his employer and payments
to a bail bondsman and to contradictory testimony by the pur-
ported employer and the bail bondsman. Such contradictions
are insufficient to support petitioner's claim. (*In re Man-
chester, supra.* 33 Cal.2d 740, 742.)

A second claim of perjury involved the testimony of
a witness named McLin that, while listening on an extension
telephone, he heard a number being dialed and then a con-
versation between Le Fave and a man who responded to peti-
tioner's name. Petitioner alleges that a number cannot be
dialed while an extension receiver is off the hook, that the
prosecution therefore must have known McLin's testimony
was perjured and that, when he asked McLin whether he was
aware a telephone conversation could not be made if he had
lifted the extension receiver, McLin admitted "he had made
a mistake." It is clear from petitioner's allegations that he
had an opportunity to present the alleged true matter at the
trial.

A third charge of perjury was based on the testimony
of a witness named Bulat. The petition alleges: Bulat testified
at the grand jury hearing that he had witnessed several meet-
ings of the defendants in petitioner's office. Before the trial
he told petitioner and two attorneys that his testimony was
false and that he had given the testimony because state officers
had threatened to prosecute him for several burglaries unless
he "testified as the officers stated that he should." On infor-
mation and belief petitioner alleges that Bulat made an offer
to the district attorney to correct his testimony and was told
he should stand by his original story.[2] At the trial Bulat, who
was called as a prosecution witness, testified that he had
"heard certain conversations" between petitioner and other
defendants at petitioner's office. Petitioner attempted to in-
troduce evidence of the foregoing alleged facts to impeach
Bulat's testimony, but an objection on the ground that a
proper foundation had not been laid was sustained, and peti-
tioner, who appeared in propria persona, did not know how

---

[2]The Attorney General points out that at the trial Bulat gave testimony
inconsistent with some of the foregoing allegations. Bulat testified that
officers had not threatened him or told him what to testify to before
the grand jury or at trial and that when he told the prosecutor that he
was unsure of some statements that he had made to the grand jury, the
prosecutor told him that when he testified he was "just to tell" what
he could remember and what he knew was the truth.

. . . .

to lay the necessary foundation. It is thus clear that petitioner now relies solely on matters known to him at the time of trial.

The petition next alleges that the prosecution suppressed evidence favorable to the defense, namely, out-of-court statements by Brajevich that were inconsistent with his testimony at trial. According to the petition, an attorney informed petitioner before trial that a member of the district attorney's staff told him that Brajevich had lied to the grand jury in order to secure an indictment and had made tape recorded statements to the police contrary to his testimony before the grand jury, and that if petitioner could obtain the statements or the tapes "it would probably win his case." Petitioner sought to subpoena the statements, but the officials denied that such statements existed, and his motion for pretrial discovery of the statements was dismissed. At trial, however, an officer admitted in response to petitioner's questions that he had "the documents" containing Brajevich's statements. A document of over 100 pages was then brought into court, but petitioner was allowed to see only one and one-half pages. As the opinion on appeal shows, the trial court was satisfied that it did not relate to the charges in the indictment. In denying a motion for a new trial the court stated that the report contained information furnished by Brajevich "relating to offenses in other counties as well as in this county, which had nothing at all to do with the case." On appeal it was concluded that the court did not err in refusing to permit inspection of the rest of the document. (*People* v. *Darnold, supra,* 219 Cal. App.2d 561, 579-582.)

■ A defendant can compel the People to produce statements of prosecution witnesses relating to the matters covered in their testimony. (*Funk* v. *Superior Court,* 52 Cal.2d 423, 424 [340 P.2d 593]; *People* v. *Chapman,* 52 Cal.2d 95, 98 [338 P.2d 428]; *People* v. *Riser,* 47 Cal.2d 566, 586 [301 P.2d 1], cert. den. 353 U.S. 930 [77 S.Ct. 721, 1 L.Ed.2d 724].)

■ When, however, the documents contain matters unrelated to the defendant's case whose disclosure would interfere with effective law enforcement (see *People* v. *Lopez,* 60 Cal.2d 223, 246 [32 Cal.Rptr. 424, 384 P.2d 16]), the trial court should inspect the documents and excise the unrelated parts. These parts should be preserved so that the appellate court can re-examine the entire text to determine the correctness of the trial judge's ruling if the defendant appeals. ■ Although this procedure does not permit defense counsel to determine for himself the relevance and importance of the withheld ma-

terial, it affords a reasonable compromise between the defendant's right to use the statement and the prosecution's need to withhold confidential information not relating to the case. It is consistent with the rule that public records are subject to inspection except when expressly made privileged. (Code Civ. Proc., §§ 1892, 1881, subd. 5.) It is the compromise Congress adopted in the Jencks Act (18 U.S.C.A., § 3500), which we believe is an appropriate model for this court to follow in adopting its own rule. (See *Decorative Carpets, Inc.* v. *State Board of Equalization*, 58 Cal.2d 252, 256 [23 Cal. Rptr. 589, 373 P.2d 637].) ■■■ Although the document was not examined by the appellate court on the appeal in this case, we cannot assume on collateral attack that the trial court acted improperly in refusing to allow petitioner to see the parts of the document that the court concluded "had nothing at all to do with the case."

Petitioner raises again a contention rejected on appeal, that it was error not to appoint counsel to represent him in the trial court. (*People* v. *Darnold, supra,* 219 Cal.App.2d 561, 579.) According to the opinion on appeal, petitioner told the court before trial that he was representing himself, that he had been advised that if he did not have sufficient funds to employ counsel he had a right to the public defender's services, and that he would reserve his decision as to whether he would be represented by the public defender but felt confident that he would represent himself. He informed the court immediately before the selection of the jury that he was representing himself, and he did not request that counsel be appointed. Before denying petitioner's motion for a new trial the court stated that the manner in which petitioner had conducted himself throughout the trial showed that he was "a rather brilliant man, in the way he handled his case." ■■■ Petitioner contends in effect that the public defender could not have represented him throughout the trial court proceedings because the public defender represented Brajevich during part of the proceedings and there was a conflict of interest between that defendant and petitioner. It would seem, however, that having been advised that he had a right to be represented by the public defender it was incumbent upon petitioner, had he wished to have other counsel assigned, to raise the matter in the trial court, and there is no claim that he did so.

■■■ There is no merit in the contention that Health and Safety Code section 12354 is so vague as to be unconstitutional because it does not contain a definition of the word "ex-

plosive."[3] Section 12354 provides: "Every person is guilty of a felony . . . who, . . . maliciously uses . . . any explosive at . . . any (a) building . . ." and section 12350, as it read at the time of the offenses charged, provided: " 'Explosives,' as used in this chapter [which includes section 12354] means nitro-glycerine, dynamite, vigorite, hercules powder, giant powder, or any other high explosive."

It is further contended that the evidence was insufficient to support the verdict, that the court erroneously refused to require the prosecutor to testify concerning his good faith in asking certain questions on cross-examination, that the court improperly failed to give certain instructions, and that the verdict of acquittal as to Le Fave was inconsistent with the verdict of guilt as to the remaining defendants. These arguments were rejected on appeal, and habeas corpus ordinarily cannot serve as a second appeal. (*In re Winchester* (1960) 53 Cal.2d 528, 532 [2 Cal.Rptr. 296, 348 P.2d 904].)

The order to show cause is discharged and the petition denied.

McComb, J., Peters, J., Tobriner, J., Peek, J., Burke, J., and Schauer, J.* concurred.

Petitioner's application for a rehearing was denied February 24, 1965. Mosk, J., did not participate therein.

---

[3]On appeal the District Court of Appeal rejected a related argument to the effect that section 12354, "as applied in this case, where no definition of an 'explosive' was given in an instruction, is unconstitutional." The court stated that the indictment charged that the explosive used was dynamite, that the word "explosive" was commonplace, and that it was not necessary to define it in an instruction. (*People* v. *Darnold, supra,* 219 Cal.App.2d 561, 583.)

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.