[Crim. No. 13131. In Bank. May 28, 1969.]

In re NATHAN ELMONT ELI on Habeas Corpus.

Bruce S. Osterman, under appointment by the Supreme Court, and Daniel B. Hunter for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Derald E. Granberg and Gloria F. DeHart, Deputy Attorneys General, for Respondent.

BURKE, J.—Nathan Elmont Eli seeks a writ of habeas corpus, contending, among other things, that error under *Witherspoon* v. *Illinois*, 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770], compels setting aside the death penalty. We have concluded that this contention must be upheld and that it is therefore necessary to remand Eli to the trial court for a new trial limited to the issue of penalty.

A jury found Eli guilty of first degree murder and imposed the death penalty. The judgment was affirmed (*People v. Eli*, 66 Cal.2d 63 [56 Cal.Rptr. 916, 424 P.2d 356] [cert. den. 389 U.S. 888 [19 L.Ed.2d 188, 88 S.Ct. 136]].)

At his trial six prospective jurors were excluded for cause on the ground of their attitude toward the death pen-

alty.[1] At least four of them were excluded by the court on the basis of a standard that was not permissible under *Witherspoon* v. *Illinois, supra,* 391 U.S. 510.[2] Each of the four stated that he had certain ideas or feelings concerning the death penalty which he believed would not permit him to sit "objectively," "fairly," or "impartially."[3] None of the four stated whether his ideas or feelings concerning the death penalty were in opposition to or in favor of that penalty, and each of them was excluded for cause without further inquiry as to the character of his ideas or feelings or whether they would cause him automatically to vote against the death pen-

[1]One prospective alternate juror was also excused on that ground; no alternates took the place of any jurors.

[2]This was understandable since the trial was before the United States Supreme Court rendered its decision in *Witherspoon* v. *Illinois, supra,* 391 U.S. 510, which sets forth new rules that the states are required to follow and to apply retroactively.

[3]Mr. Bennett.

"Q [By the Court]: Recognizing that the charge involves that of murder, do you have any preconceived ideas or feelings with reference to the imposition of the death sentence in a proper case?

"A Yes, sir.

"Q You do have such feelings?

"A Yes, sir.

"Q You do not feel you could sit objectively in this matter?

"A No, sir, I don't.

"THE COURT: Very well. You may be excused, sir."

Mr. Marbry.

"THE COURT: Let me ask you this question: It is a crime that involves the death penalty perhaps. Is that a factor in your consideration?

"JUROR MARBRY: Yes, sir.

"THE COURT: You feel that you could not sit fairly and impartially in a case that may involve the matter of the death penalty; is that a fair statement?

"JUROR MARBRY: Yes, sir.

"THE COURT: All right, Mr. Marbry. You may be excused, sir."

Mr. Derczo, Jr.

"Q [By the Court]: Do I gather from what you are now saying that you have some preconceived ideas with reference to the matter of capital punishment?

"A Yes.

"Q And it is your feeling that by reason of your preconceived ideas, your opposing or in favor of it, that you could not sit fairly and objectively if the matter were to be referred to you on the punishment phase?

"A That's right.

"THE COURT: Very well. The Court will excuse you. You may be excused, sir."

Mrs. Caldwell.

"Q [By the Court]: Tell me first if you have any feelings one way or the other with reference to the imposition of the death sentence in a proper case?

"A Yes, sir, I do.

"Q You do not feel you could sit objectively then if you were called upon to determine the sentence in this case?

"A I feel I couldn't.

"THE COURT: Very well. You may be excused."

alty without regard to any evidence that might be introduced at the trial.

*Witherspoon* v. *Illinois, supra,* 391 U.S. 510, 521-522 [20 L.Ed.2d 776, 784-785, 88 S.Ct. 1770], states, "Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction,[21]" and footnote 21 reads in relevant part, "The most that can be demanded of a venireman in this regard [whether he would in fact vote for the death penalty in the case before him] is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the *voir dire* testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out. . . ."

Here the previously recited *voir dire* testimony of the four veniremen shows that veniremen were excluded on a broader basis than the one regarded as permissible by *Witherspoon.* The standard here employed appears to have been whether in the judgment of the individual venireman his ideas or feelings concerning the death penalty would preclude his serving fairly and impartially. ■ A venireman might well conclude erroneously that his general objections to the death penalty or conscientious or religious scruples against its infliction precluded him from being a fair and impartial juror. but, as *Witherspoon* points out (391 U.S. at p. 519 [20 L.Ed.2d at p. 783]), "A man who opposes the death penalty, no less than one who favors it, can make the discretionary judgment entrusted to him by the State and can thus obey the oath he takes as a juror. But a jury from which all such men have been excluded cannot perform the task demanded of it." **[1b]** Although the standard here employed might not exclude all opponents of capital punishment, it undoubtedly would exclude many or most of them and could prejudice unduly the rights of a defendant to a fair trial on the issue. The standard was not permissible under *Witherspoon* and the death penalty must therefore be set aside.

■ Eli also contends: (1) the death penalty constitutes cruel and unusual punishment; (2) the administration of the death penalty in the absence of prescribed standards violates

the due process and equal protection clauses of the United States Constitution; and (3) exclusion of veniremen on the ground of their opposition toward capital punishment denied him his right to an unbiased jury representing a cross-section of the community at the *guilt* phase of the trial. He requests an evidentiary hearing on the "allegations of this petition."

The first two of the above contentions are settled by our decision in *In re Anderson* and *Saterfield,* 69 Cal.2d 613 [73 Cal.Rptr. 21, 447 P.2d 117], and Eli's request for an evidentiary hearing on those issues is denied for the same reasons we denied a like request in the last mentioned case. With respect to the third contention, we recently stated in *In re Arguello, ante,* pp. 13, 16 [76 Cal.Rptr. 633, 452 P.2d 921], ". . . in the absence of persuasive documentation we must agree with the United States Supreme Court that 'We . . . cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction.' (*Witherspoon* v. *Illinois, supra,* 391 U.S. 510, 517-518 . . .; see also *Anderson* and *Saterfield, supra,* 69 Cal.2d 613, 617, 620-621; *People* v. *Gonzales,* 66 Cal.2d 482, 498-499. . . .)" *Arguello* requested an evidentiary hearing but (1) did not state whether or not he was now prepared for such a hearing and (2) gave no indication of the nature of the evidence he intended to introduce, and we stated that an evidentiary hearing was not warranted. Eli also does not set forth either matter and an evidentiary hearing likewise is not warranted here.

 Eli further attacks the judgment on the issue of guilt on the ground that his confession, introduced at the guilt trial, was involuntary. On appeal we rejected the claim that coercion was used to obtain the confession. (*People* v. *Eli, supra,* 66 Cal.2d 63, 77.) The cited opinion shows that at the trial conflicting evidence was introduced relating to the voluntariness of the confession, that the trial court found the confession was voluntary, and that the jury was instructed to determine the issue of whether the confession was voluntary. "We have consistently held that an issue which is raised in the trial court, and upon which conflicting testimony develops, cannot serve as a basis for habeas corpus; we cannot sanction piecemeal presentation or split adjudication of such issues. . . ." (*People v. Jackson,* 67 Cal.2d 96, 99 [60 Cal.

Rptr. 248, 429 P.2d 600] ; *In re Shipp,* 62 Cal.2d 547, 552 [43 Cal.Rptr. 3, 399 P.2d 571] [cert. den. 382 U.S. 1012 [15 L.Ed. 2d 528, 86 S.Ct. 623]].)

██ Eli also contends that his statements, which were introduced at the guilt trial, were obtained in violation of his constitutional rights and that misconduct of the prosecutor in cross-examining Eli's character witnesses at the guilt trial as to whether they had heard of certain acts of misconduct by him was prejudicial error. These contentions were rejected on appeal, and habeas corpus ordinarily cannot serve as a second appeal. (*In re Lessard,* 62 Cal.2d 497, 505 [42 Cal.Rptr. 583, 399 P.2d 39] ; *In re Waltreus,* 62 Cal.2d 218, 225 [42 Cal. Rptr. 9, 397 P.2d 1001] ; *In re Winchester,* 53 Cal.2d 528, 532 [2 Cal.Rptr. 296, 348 P.2d 904].)

Eli's request for an evidentiary hearing on the issues adjudicated against him on appeal is denied.

Under the compulsion of *Witherspoon* v. *Illinois, supra,* 391 U.S. 510, the writ is granted as to the penalty trial. The remittitur issued in Crim. 9235, *People* v. *Eli,* is recalled and the judgment imposing the death penalty is reversed insofar as it relates to the penalty. In all other respects it is affirmed.

Eli is remanded to the custody of the San Diego County Superior Court for a new penalty trial.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would deny the writ.

Petitioner's application for a rehearing was denied June 25, 1969.