19 F.3d 27
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Toney Alfonso JOHNSON, Petitioner-Appellant,
v.
Robert G. BORG, Warden, Respondent-Appellee.
 No. 91-16879.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 8, 1994.*
Decided March 2, 1994.
 
 Before: HUG, FARRIS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 We have jurisdiction of the timely appeal pursuant to 28 U.S.C. Secs. 1291 and 2253. We affirm.
 
 
 3
 The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc) cert. denied, 113 S.Ct. 1818 (1993); Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). The standard for determining whether habeas relief should be granted in any given case is whether the alleged constitutional errors had substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 113 S.Ct. 1710, 1714 (1993). To apply this standard, the reviewing court must make a de novo examination of the trial record. Id. at 1724. "It requires a reviewing court to decide that the error did not influence the jury, and that the judgment was not substantially swayed by the error." Id. (quotations omitted).
 
 Ineffective Assistance of Counsel
 
 4
 Johnson alleges that his Sixth Amendment right to the assistance of counsel and his Fourteenth Amendment right to due process were violated by his trial and appellate counsel's failure to render effective assistance. Johnson lists seven mistakes which he claims individually and cumulatively deprived him of his constitutional rights.
 
 
 5
 The standard for measuring a claim of ineffective assistance of counsel is the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687-96 (1984). Defendants must prove that their counsel's performance fell below an objective standard of reasonableness and, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. See id. at 688, 694 (emphasis added); Morrison v. Estelle, 981 F.2d 425, 427 (9th Cir.1992), cert. denied, 113 S.Ct. 2367 (1993). "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
 
 
 6
 Judicial scrutiny of counsel's performance must be highly deferential. Because of the difficulties inherent in making a hindsight evaluation, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. at 689. A difference of opinion as to appropriate trial tactics does not rise to level of denial of effective assistance of counsel. United States v. Mayo, 646 F.2d 369, 375 (9th Cir.), cert. denied sub nom., Dondich v. United States, 454 U.S. 1127 (1981).
 
 
 7
 The standard applied for claims relating to the assistance of appellate counsel is the same. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989). The reviewing court determines whether counsel's performance fell below an objective standard of reasonableness and whether there is a reasonable possibility that, but for the appellate counsel's unprofessional errors, the appeal would have been successful. Id. at 1434.
 
 
 8
 The district court held, and we agree, that Johnson failed to establish that his counsel's performance was unprofessional, or below an objective standard of reasonableness. Further, there is no indication that, but for any of the allegedly unprofessional acts of counsel, individually or cumulatively, the result of the trial or appeal would have been different.
 
 
 9
 1. Should counsel have argued that Penal Code Sec. 12022.8 was vague as applied to appellant?
 
 
 10
 At the time of Johnson's trial, a California court had noted in dictum that the transmission of venereal disease during rape constituted infliction of great bodily injury. People v. Williams, 115 Cal.App.3d 446, 454-55, 171 Cal.Rptr. 401, 406 (1981). Another case, cited by Johnson, accepted without comment that infliction of venereal disease fell within the meaning of Sec. 12022.8. People v. Caudillo, 21 Cal.3d 562, 582, 146 Cal.Rptr. 859, 580 P.2d 274 (1978). There is no support for Johnson's contention that his counsel's failure to raise the claim fell below an objective standard. Moreover, Johnson was not prejudiced by his counsel's inaction.
 
 
 11
 2. Should counsel have moved to correct the preliminary hearing transcript?
 
 
 12
 Regardless of whether the inconsistencies in the preliminary hearing transcript alleged by Johnson actually existed and regardless of whether Johnson's counsel should have corrected the hearing transcript, there is no way that Johnson's trial or appeal was prejudiced by that omission. The prosecution's witness had been infected with the herpes virus. The prosecution was not concealing damaging information.
 
 
 13
 3. Did the counsel's decision to allow evidence of Johnson's prior conviction render his assistance ineffective?
 
 
 14
 Johnson's counsel was not ineffective. The California constitution (Art. I, Sec. 28, subd. (f)) permits the use of prior felony convictions for impeachment or enhancement of sentence purposes in any criminal proceeding. Counsel was powerless to prevent the prosecution from introducing the conviction as evidence. He chose to "soften the blow" by introducing the evidence in the most favorable light possible. This choice is not a basis for alleging a denial of effective assistance of counsel. Mayo, 646 F.2d at 375.
 
 
 15
 4. Should counsel have introduced as evidence the fact that swabs from the victim's mouth did not contain semen?
 
 
 16
 The outcome of the trial or appeal would not have been altered by the introduction of evidence relating to the cotton swabs. Johnson apparently assumes that the absence of semen in the mouth is evidence of an absence of oral copulation. If so, he fails to understand that the absence of semen in the oral cavity proves nothing--either one way or the other.
 
 
 17
 5. Should counsel have called other defense witnesses?
 
 
 18
 Johnson's counsel's failure to interview or subpoena Johnson's sister and cousin was not prejudicial. As the district court noted, "[t]he fact that the witnesses were family members and that their testimony did not cover a significant majority of the time during which Mr. Johnson was alleged to have been committing his crimes suggests that their testimony would not have played a significant role in the proceedings." The testimony of his family would not have altered the outcome of the case.
 
 
 19
 6. Should counsel have impeached Lucia's testimony using police reports not revealed to Johnson?
 
 
 20
 The contradictions Johnson alleges are not supported by the record. Moreover, whatever ambiguity there is in the record is of little or no consequence. Whether Johnson approached from the left or right side, whether he revealed his knife before he got in the car and whether Lucia remembered him as well groomed or not would not have substantially affected Lucia's credibility before the jury. Johnson's counsel was not ineffective.
 
 
 21
 7. Should counsel have argued against the imposition of an additional penalty for kidnapping under Penal Code Sec. 654?
 
 
 22
 In California, multiple consecutive punishments are permissible if there is evidence to support a finding that the defendant formed a separate intent and objective for each offense for which he was sentenced. People v. Coleman, 48 Cal.3d 112, 162, 255 Cal.Rptr. 813, 843, 768 P.2d 32 (1989), cert. denied, 494 U.S. 1038 (1990); People v. Adams, 137 Cal.App.3d 346, 355, 187 Cal.Rptr. 505, 511 (1982). Based on the evidence introduced at trial, kidnapping could be construed as a distinct act from the rape. Johnson claimed he needed to be driven to escape the police. It was permissible for the court to conclude that the kidnapping offense was separate from the rape. Counsel was not ineffective for failing to raise this argument.
 
 Trial Court Error in Sentencing
 
 23
 Johnson alleges that trial court abused its discretion by imposing full, separate, and consecutive terms for the sex offenses pursuant to California Penal Code section 667.6, sub. (c). Johnson makes no attempt to frame his argument in terms of a federal constitutional claim. Federal courts cannot address issues of state sentencing unless they somehow relate to federal law. 28 U.S.C. Sec. 2254 (A person in state custody may petition a federal court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); Estelle v. McGuire, 112 S.Ct. 475, 481-82 (1992); Guzman v. Morris, 644 F.2d 1295, 1297 (9th Cir.1981).
 
 Fairness of the Jury Venire
 
 24
 Johnson claims that his jury did not include any African-Americans. Apparently, the pool of jurors available for the trial included very few African-Americans. His counsel exercised all of his challenges in the hope of getting an African-American in the jury but was unsuccessful. As a result, Johnson argues that he did not receive a fair trial. There is no error.
 
 1. Procedural Default
 
 25
 The state argues that Johnson has procedurally defaulted on this claim because he did not raise it on direct appeal before the Supreme Court of California (he did raise it before the Court of Appeal). However, Johnson did raise the claim before the California Supreme Court in one of his state habeas petitions.
 
 
 26
 The petition was denied without prejudice, and the court cited In re Waltreus, 62 Cal.2d 218, 225, 42 Cal.Rptr. 9, 397 P.2d 1001, cert. denied 382 U.S. 853 (1965) and In re Miller, 17 Cal.2d 734, 735, 112 P.2d 108 (1941). Both cases hold that arguments rejected on appeal do not have to be reconsidered on habeas corpus. The California Supreme Court considered Johnson as having exhausted his jury claim on direct appeal. There is no procedural default.
 
 2. Unfair Jury Composition
 
 27
 In order to establish a prima facie violation of the fair cross-section requirement, defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979).
 
 
 28
 Assuming that Johnson can satisfy the first two prongs of the Duren test, Johnson must still show that the absence of African-Americans in the pool of potential jurors from which his jury was selected was due to the systematic exclusion of African-Americans in the jury selection process. The record contains no evidence on the question. Nothing even suggests the systematic exclusion required by Duren.
 
 Denial of the writ is
 
 29
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, appellant's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3