187 Cal.App.4th 138 (2010)
In re WILLIE CLIFFORD COLEY on Habeas Corpus.
No. B224400.
Court of Appeals of California, Second District, Division Five.
August 4, 2010.
*140 Nancy L. Tetreault, under appointment by the Court of Appeal, for Petitioner Willie Clifford Coley.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson, Janet E. Neeley and Noah P. Hill, Deputy Attorneys General, for Respondent State of California.

OPINION
KUMAR, J.[*]

I. INTRODUCTION
Petitioner was convicted of failing to update his sex offender registration within five working days of his birthday (Pen. Code, former § 290, subd. (a)(1)(D))[1] and, due to his prior criminal convictions, was sentenced to 25 years to life pursuant to the "Three Strikes" law (Pen. Code, § 1170.12, subds. (b)-(e)).
In response to an order issued by the California Supreme Court, we consider whether, in light of the holding in People v. Carmony (2005) 127 Cal.App.4th 1066 [26 Cal.Rptr.3d 365] (Carmony), petitioner's sentence violates the Eighth Amendment. We conclude petitioner's sentence does not violate the Eighth Amendment and respectfully disagree with Carmony.

*141 II. FACTUAL BACKGROUND
Petitioner was arrested as part of a "parolee at large sweep" and subsequently convicted of the above-referenced sex offender registration offense. He admitted having prior convictions for voluntary manslaughter, rape in concert, and robbery. After being sentenced to 25 years to life pursuant to the Three Strikes law, petitioner appealed the judgment of conviction arguing, inter alia, that the punishment violated the Eighth Amendment's proscription against cruel and unusual punishment. We rejected that claim, as well as others, and affirmed the judgment in 2003.
Following the denial of petitioner's petition for review, the Third Appellate District of the Court of Appeal held, in Carmony, supra, 127 Cal.App.4th at pages 1074-1084, that the implementation of the Three Strikes law to trigger a sentence of 25 years to life violates the Eighth Amendment if the only current felony conviction (i.e., the felony triggering applicability of the Three Strikes law) is for failing to update sex offender registration within five working days of the defendant's birthday.
On June 16, 2009, petitioner filed a habeas corpus petition in the California Supreme Court arguing that, as in Carmony, petitioner's sentence violates the Eighth Amendment. The Supreme Court, citing Carmony, issued an order directing the Director of the Department of Corrections and Rehabilitation to show cause, before this court, why petitioner is not entitled to relief. We now consider the merits of petitioner's Eighth Amendment challenge, in light of Carmony.[2]
(1) In assessing an Eighth Amendment challenge to a 25-year-to-life sentence imposed pursuant to the Three Strikes law, the United States Supreme Court has held, even if the current offense is not serious, the sentence can be "justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and ... [the defendant's] own long, serious criminal record." (Ewing v. California (2003) 538 U.S. 11, 29-30 [155 L.Ed.2d 108, 123 S.Ct. 1179] (plur. opn. of O'Connor, J.).)
*142 (2) Here, petitioner's criminal history is both lengthy and serious. Between 1978 and 2001 petitioner was sentenced to prison for 15 years for committing burglary in Florida; sentenced to 20 years in state prison for committing manslaughter, rape in concert, and robberies; and returned to prison on three separate occasions for parole violations. After giving due weight to petitioner's serious criminal history, we find the gravity of the offense to be significant and the punishment of 25 years to life in state prison to be constitutional. In addition we respectfully disagree with the analysis in Carmony because it (1) relies, in part, on a dissenting opinion in Ewing; (2) extends the holding of Solem v. Helm (1983) 463 U.S. 277 [77 L.Ed.2d 637, 103 S.Ct. 3001], to cases where a defendant's sentence contemplates the possibility of parole; and (3) assesses the gravity of a sex offender's failure to update registration without providing due consideration to the offender's prior criminal history.

III. DISCUSSION

A. United States Supreme Court Precedent
Petitioner does not contend his sentence constitutes cruel or unusual punishment under the California Constitution (Cal. Const., art. I, § 17). Rather, his claim is that the punishment amounts to cruel and unusual punishment in violation of the Eighth Amendment to the federal Constitution. Thus, we turn to applicable United States Supreme Court precedent evaluating states' noncapital punishment schemes under the Eighth Amendment.
(3) For purposes of the Eighth Amendment, the question of whether punishment for a noncapital crime must carry a "proportionate" sentence is a "narrow principle." (Ewing v. California, supra, 538 U.S. at p. 21.) The United States Supreme Court has, "`on occasion stated that the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime.' [Citation.] But `[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.' [Citation.]" (Ewing, supra, 538 U.S. at p. 21, italics added.)
This limited assessment of proportionality was applied in Rummel v. Estelle (1980) 445 U.S. 263 [63 L.Ed.2d 382, 100 S.Ct. 1133]. Rummel was convicted of theft of approximately $120 by false pretenses. Due to his prior felony convictions for "fraudulent use of a credit card to obtain $80 worth of *143 goods or services" and "passing a forged check in the amount of $28.36" (id. at p. 265), he was sentenced to life in prison with the possibility of parole (id. at pp. 284-285). The court held the punishment did not violate the Eighth Amendment as it was not the "exceedingly rare" circumstance where a proportionality analysis rendered punishment for a noncapital offense unconstitutional. (445 U.S. at pp. 274, 292.) Indeed, the Supreme Court suggested great restraint should be placed on a finding that noncapital punishment amounts to cruel and unusual punishment by emphasizing that such a finding is only applicable in an "extreme" case such as a statute dictating a life term for a parking violation. (Id. at p. 274 & fn. 11.)
In Ewing v. California, supra, 538 U.S. 11, the Supreme Court adhered to this restraint in addressing the constitutionality of a 25-year-to-life sentence under the Three Strikes law for a relatively minor theft offense. Ewing was charged with stealing three golf clubsa crime that was subject to prosecution as a felony or a misdemeanor. The offense was prosecuted as a felony and Ewing was convicted. The trial judge declined to reduce the offense to a misdemeanor and, because Ewing admitted to having been convicted of four "strike" offenses (e.g., three burglaries and one robbery), he was sentenced to 25 years to life pursuant to the Three Strikes law. (538 U.S. at pp. 19-20.)
Following the approach in Rummel, Ewing engaged in a limited proportionality review. The court first explained the manner in which an appellate tribunal is to assess the gravity of an offense for purposes of an Eighth Amendment analysis. "In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." (Ewing v. California, supra, 538 U.S. at p. 29.) In this regard, between 1984 and 1999, Ewing had been convicted of "numerous misdemeanor and felony offenses, served nine separate terms [in either jail or prison], and committed most of his crimes while on probation or parole." (Id., at p. 30.)
Ewing then, in conducting a limited proportionality review, considered the gravity of the offense in light of the legislative objective behind the Three Strikes law and the severity of the punishment imposed. "To be sure, Ewing's sentence is a long one. But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated. The State of California "was entitled to place upon [Ewing] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State.' [Citation.] Ewing's is not `the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.' [Citation.]" (Ewing v. California, supra, 538 U.S. at p. 30.)

*144 B. Application of Eighth Amendment Principles to Petitioner's Case

1. Petitioner's Criminal History
In 1978, petitioner was sentenced to 15 years in state prison for burglary committed in Florida. He was discharged from a Florida prison on June 17, 1986 and, at some point thereafter, moved to California. In January 1988, he committed voluntary manslaughter. Five months later, he committed rape in concert and two robberies. For his 1988 offenses, he was sentenced to 20 years in state prison.
He was released from state prison in 1998 but returned to prison on three separate occasions for parole violations before he ultimately committed the instant offense in 2001. The nature of the parole violations included positive narcotics tests for cocaine, PCP, and methamphetamine as well as absconding from parole and traveling to Florida without permission.
The facts underlying petitioner's manslaughter, rape, and robbery convictions bear mentioning as they are particularly callous. The manslaughter case arose out of a dispute between petitioner's roommate and a woman. Petitioner's roommate believed the woman had stolen some of the roommate's cocaine. The roommate struggled with the woman and called out to petitioner to lend assistance. Petitioner held the woman down as his roommate attempted to examine the woman's rectum and vagina for the missing cocaine. During the struggle, the woman was choked and fell unconscious. The two men tied an electrical cord around her hands, feet, and neck. Petitioner and his roommate went to sleep and, when they awoke, realized the woman was dead. Because she had defecated, they bathed her. The men cut the woman's fingernails in an attempt to destroy evidence under her fingernails (i.e., human skin) indicating she had scratched petitioner's roommate. After doing so, they moved the woman to an inoperable freezer where her body was stored.
Four months after committing the killing, petitioner and his roommate committed rape and robbery. They entered a woman's residence at 3:00 a.m. while she was sleeping. She was pulled from her bed, her hands were bound, and tape was placed across her mouth. Petitioner's roommate raped the woman while petitioner stood guard.
Petitioner's roommate then ordered the woman to call another man and invite him to the residence. When the man arrived, petitioner's roommate invited him inside and took him to the bedroom where petitioner was keeping *145 the woman. Petitioner's roommate put a knife to the man's throat, threatened to kill him, and took his wallet.
The probation officer responsible for drafting the probation report prior to sentencing on these offenses wrote: "It is absolutely incomprehensible to understand how [petitioner] and [his roommate] could continue living in an apartment with a body decomposing in a freezer and dripping fluid on the kitchen floor." The probation officer indicated petitioner was "a man without a conscience" and that petitioner "show[ed] no remorse for his behavior and it is expected that he will re-involve himself in criminal behavior when he is released from State Prison." He concluded, petitioner was "an extreme danger to the community."

2. The Punishment Is Not Grossly Disproportionate to the Offense
When comparing the gravity of the offenses and the degree of punishment in Ewing and Rummel with that of petitioner, it is quite clear that petitioner's punishment does not violate the Eighth Amendment. In assessing the gravity of petitioner's offense we follow the blueprint provided by Ewing and consider, not only the current offense, but also petitioner's criminal history as it pertains to the legislative objective of public safety.
Petitioner's current offense is not trivial. The California Supreme Court has assessed the importance of the sex offender registration legislation: "`The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' [Citations.] Plainly, the Legislature perceives that sex offenders pose a `continuing threat to society' [citation] and require constant vigilance. [Citation.]" (Wright v. Superior Court (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101].)
The need to track petitioner and have him strictly comply with the registration and update requirements is elevated. Apart from his serious criminal convictions, he is a longtime drug abuser who is not able to conform his conduct to the rules and regulations required for parolees. Indeed, he was a "parolee at large" when he was apprehended in the instant case. Strict compliance with sex offender registration and update requirements are particularly important given these circumstances.
Moreover, assessing petitioner's recidivist history adds great weight to the gravity of the offense. Between 1978 and 2001 he was either in prison, committing felony offenses, or violating parole. During this 23-year period, *146 the only timeframe petitioner was out of custody and appearing to conform his conduct to the norms of society was for a mere 18 months (between his release from a Florida prison and the commission of manslaughter). In addition, killing a human being and depositing the body in a freezer as well as sneaking into a woman's residence at 3:00 a.m. and participating in a rape and robbery are, even in the scheme of felony offenses, on the serious and vile end of the spectrum.
(4) Thus, as in Ewing, petitioner's sentence is "justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record." (Ewing v. California, supra, 538 U.S. at pp. 29-30.) "When the California Legislature enacted the [T]hree [S]trikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. Nothing in the Eighth Amendment prohibits California from making that choice." (Ewing, supra, 538 U.S. at p. 25.) This is not the "extreme" case necessary to justify a finding that noncapital punishment violates the Eighth Amendment.

C. The Carmony Decision
Like petitioner, Carmony was convicted of failing to update his sex offender registration within five days of his birthday. Carmony had three prior "strike" offensestwo for assault with a deadly weapon[3] and one for oral copulation by force or fear with a minor under the age of 14 years. (Carmony, supra, 127 Cal.App.4th at pp. 1073, 1080.)
Citing a dissenting opinion in Ewing, Carmony indicates, "`in cases involving recidivist offenders, we must focus upon "the [offense] that triggers the life sentence," with recidivism playing a "relevant," but not necessarily determinative, role.' [Citation.]" (Carmony, supra, 127 Cal.App.4th at p. 1077.) Carmony then states, "Applying these principles, we find, as did the court in Solem [v. Helm, supra, 463 U.S. 277], that this is a rare case, in which the harshness of the recidivist penalty is grossly disproportionate to the gravity of the offense. Indeed, because [Carmony's] offense was an entirely passive, harmless, and technical violation of the registration law, it was less serious than the offense ... committed by the defendant in Solem." (Ibid.)
*147 We respectfully disagree with this approach because (1) the dissenting opinion in Ewing should have no persuasive impact on the Eighth Amendment analysis; (2) as recognized by the Ewing plurality, Solem is limited to the unique situation where a life sentence without the possibility of parole is imposed for a nonviolent felony; and (3) a sex offender's failure to update registration is neither "technical" nor "harmless."
First, we choose, as we think we must, to follow the plurality opinion in Ewing rather than a dissenting opinion. (Raven v. Deukmejian (1990) 52 Cal.3d 336, 352 [276 Cal.Rptr. 326, 801 P.2d 1077]; Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d 899, 915 [153 Cal.Rptr. 854, 592 P.2d 341]; see also Estate of Pittman (1998) 63 Cal.App.4th 290, 300 [73 Cal.Rptr.2d 622].) Thus, to the extent Carmony references the dissenting opinion as justification to lessen the significance of recidivism in an Eighth Amendment analysis, we decline to do so.
Second, the holding of Solem has been limited by the United States Supreme Court. In Solem, the defendant was convicted of "uttering a `no-account check' for $100." (Solem v. Helm, supra, 463 U.S. at p. 281.) Due to the defendant's prior convictions, he was sentenced to life in prison without the possibility of parole. After engaging in an analysis to determine whether the punishment was grossly disproportionate to the crime, the high court concluded the sentence amounted to cruel and unusual punishment. (Id. at pp. 296-303.)
The Supreme Court revisited Solem when deciding Ewing: "We specifically noted [in Solem] the contrast between that sentence and the sentence in Rummel, pursuant to which the defendant was eligible for parole. [Citations.] Indeed, we explicitly declined to overrule Rummel.... [Citations.]" (Ewing v. California, supra, 538 U.S. at p. 22, italics added.) Thus, due to the fact that petitioner's sentence allows for the possibility of parole, the applicable Eighth Amendment analysis is derived from Rummel and Ewing, not Solem.
Finally, we respectfully disagree with Carmony's characterization of the offense as "technical," "harmless" and "no worse than a breach of an overtime parking ordinance." (People v. Carmony, supra, 127 Cal.App.4th at pp. 1077, 1079.) Such an assessment of the gravity of an offense for purposes of an Eighth Amendment analysis, does not, as is required by Ewing, place any weight on a defendant's recidivism. (Ewing v. California, supra, 538 U.S. at p. 29.)
*148 Although Carmony addresses the defendant's recidivism, we respectfully disagree with the framework of the analysis. Carmony recognizes that recidivism is a consideration in an Eighth Amendment analysis but it does not use recidivism in determining the gravity of the offense. In fact, Carmony minimizes the importance of recidivism by acknowledging the Legislature may impose stiffer penalties for recidivist offenders but "because the penalty is imposed for the current offense, the focus must be on the seriousness of that offense. [Citation.]" (Carmony, supra, 127 Cal.App.4th at p. 1079.) In support of this proposition, Carmony cites Witte v. United States (1995) 515 U.S. 389, 402-403 [132 L.Ed.2d 351, 115 S.Ct. 2199]. (Carmony, at p. 1079.)
(5) The issue in Witte was whether the double jeopardy clause prohibits a defendant from being convicted of a criminal offense where the conduct underlying that offense has been used in a prior case to enhance the defendant's sentence in the prior case. The Supreme Court held the double jeopardy clause does not preclude the second prosecution because in circumstances "where the [L]egislature has authorized ... a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction for purposes of the double jeopardy inquiry." (Witte v. United States, supra, 515 U.S. at pp. 403-404.)
(6) We respectfully disagree with the implementation of Witte in an Eighth Amendment analysis and the notion that, in assessing the propriety of punishment under the Eighth Amendment, an appellate tribunal must focus on the seriousness of the current offense. Indeed, Ewing expressly cautioned against this approach when it noted that the failure to include recidivism on the scale when weighing the gravity of the offense, "would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of [the] conviction, or the `triggering' offense: `[I]t is in addition the interest... in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' [Citations.]" (Ewing v. California, supra, 538 U.S. at p. 29.) In light of Carmony's prior convictions, particularly the convictions involving the death of a fetus and using force or fear to orally copulate a minor under the age of 14 years, and the compelling legislative intent to track sex offenders and punish recidivist offenders, the gravity of his offense far exceeds that of a parking violation.

*149 IV. DISPOSITION
The order to show cause is discharged and the petition for writ of habeas corpus is denied.
Turner, P. J., and Kriegler, J., concurred.
NOTES
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] The requirement to update sex offender registration is currently codified in Penal Code section 290.012.
[2] Generally, a habeas corpus petitioner may not raise an issue which has been previously raised and rejected on appeal. (In re Waltreus (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001].) However, an "exception ... established by case law, [permits] a petitioner to raise in a petition for writ of habeas corpus an issue previously rejected on direct appeal when there has been a change in the law affecting the petitioner. [Citations.]" (In re Harris (1993) 5 Cal.4th 813, 841 [21 Cal.Rptr.2d 373, 855 P.2d 391].) Because Carmony was decided after petitioner's appeal and arguably constitutes a change in the law, we do not find petitioner's claim is procedurally barred.
[3] Carmony's first conviction was the result of him punching and kicking his pregnant girlfriend, causing a miscarriage. His second conviction was for punching and kicking a different girlfriend as well as cutting her hand with a knife. (Carmony, supra, 127 Cal.App.4th 1066, 1080, fn. 9.)